[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: HEARING IN DAMAGES
The plaintiff brings this complaint for violations of the solid waste and water pollution statutes and regulations against Sanitary Services Corporation and its principal, Michael Botticello on premises located at 14 Iffland Pond Road, Litchfield. The court entered a default against the defendants for failure to appear on January 25, 2001. The Commissioner now seeks the assessment of a civil penalty and certain injunctive relief as requested in his complaint.
The plaintiff alleges in his complaint that he is charged with the supervision and enforcement of the statutes of Connecticut respecting the environment including solid waste and water pollution and is empowered pursuant to G.S. § 22a-6 (a)(3) to bring legal proceedings to enforce such. The defendant, Sanitary Services, with a main place of business at 321 Olcott Street, Manchester, Connecticut has been operating a "transfer station" as defined in G.S. § 22a-207 (10) in violation of G.S. § 22a-208c and G.S. § 22a-207b which requires a permit for such operation to comply with the provisions of G.S. § 22a-208a at various times from December, 1996 through June 5, 1998. The defendant, Michael Botticello, as president, director and manager of the defendant, Sanitary Services, in its day-to-day operation had facilitated these violations by his inaction and failure to obtain a permit for such construction and operations.
The defendants obtained a General Permit for the discharge of a Storm Water Associated with Industrial Activity issued October 1, 1992 and renewed October, 1997 but failed to comply with the terms of said permit in failing to develop a Storm Water Pollution Prevention Plan, in contaminating the soil with oil and storing solid waste outside on the ground, failing to cover all dumpsters and failing to monitor the storm water. The defendants also discharged vehicle service wastewater to the waters of the state without a permit in violation of G.S. § 22a-430.
Darlene Sage, an environmental analyst with the plaintiff's office was called as a witness who produced numerous reports of inspections made of the premises from October 30, 1996 through February 2, 2000, along with written Notices of Violation address to the defendants with return receipted and four oral discussions reported with a person in charge, all concerning solid waste storage in uncovered containers in violation of G.S. § 22a-208c and G.S. § 22a-207b. See Plaintiff's Exhibit 1. Sage testified that she inspected the premises June 30, 2000 and spoke to Donald Albearda, operations manager for Sanitary Services who stated he worked for Michael Botticello who owned the company. She again inspected the site on September 14, 2000 and again spoke to Albearda who stated it would take some time to clear the site. She took photos of the site on both occasions and made written reports which have been accepted into evidence respectively as Plaintiff's Exhibits 5, 6, 2 and 3. She also CT Page 1363 obtained the assessor's copy of ownership of the site (Plaintiff's Exhibit 4) in the name of Michael Botticello et al.
Donna Seresen, a Sanitary Engineer with the Department of Environmental Protection, who works in the division enforcing the laws and regulations against the pollution of storm water run-off, testified that the defendant was issued a General Permit for discharge of Storm Water Associated with Industrial Activity for the premises, dated October 1, 1997, Plaintiff's Exhibit 7, and had registered, Plaintiff's Exhibit 8,
and received a Certificate of Registration, Plaintiff's Exhibit 9, but failed to submit storm water monitoring results from October 1, 1997 to September 30, 1998 pursuant to Section 5(d)(3)(A) and was given a Notice of Violation dated February 5, 1998, Plaintiff's Exhibit 10. A Notice of Violation dated March 27, 2000 (Plaintiff's Exhibit 11) was sent for failure to comply for the period October 1, 1998 to September 30, 1999. Letters were sent concerning a personal inspection on March 31, 2000, which observation revealed trash littering the ground, oil spills, uncovered dumpsters with trash and hoses carrying polluted water to the pond, said letters being dated April 10, 2000, April 18, 2000 and May 19, 2000. Plaintiff's Exhibits 12 and 14. Photographs were taken at the time of the inspection on March 31, 2000 as to the condition of the premises. Plaintiff's Exhibit 13. In her inspection of the premises on August 22, 2001 she learned from Mr. Donald Albearda that he had purchased dumpsters from Botticello and was operating the premises on a lease but was unfamiliar with the need of a permit. Sereson explained the need of a permit and the requirements to clean up the premises which appeared to be kept cleaner than previously observed.
The defendants did not appear at the hearing in damages or present any evidence in opposition to the plaintiff's claims. Where there is a default judgment and nothing more, the cause of action and every element necessary to establish it are admitted and all that remains is to fix the amount of damages. Kiessling v. Kiessling, 134 Conn. 564, 568.
The Commissioner has produced evidence that the defendants have for long periods of time violated the mandate of the statutes to manage solid waste and abate, control and prevent pollution of storm waters and are therefore subject to penalties not to exceed twenty-five thousand dollars for each offense which in a continuing violation as this was, each day was deemed to be a separate and distinct offense under each, C.G.S. § 22a-226 and C.G.S. § 22a-438 (a). He suggests a total monetary penalty for the solid waste violations of $100,900.00 and a total monetary penalty for the violations of the water pollution statutes of $172,650.00 for a total of $273,550. Considering the length of time required for any compliance such penalties appear to be appropriate to deter the defendants and others in the future and is fair and equitable considering CT Page 1364 the overview of the Commissioner. He also requests injunctive relief to prevent further pollution at the site and to remediate any pollution at the site.
 ORDER
Wherefore, based upon the foregoing law and the evidence presented at the hearing the court assesses a civil penalty which is less than the maximum penalty, in the amount of $273,550 jointly and severally on the defendants and enjoins each defendant from further pollution of said site and to remediate any pollution presently at said site.
____________________ Thomas H. Corrigan Judge Trial Referee